IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FREDRICK T.**,[1] <br><br> Plaintiff, <br><br> v. <br><br> **KILOLO KIJAKAZI**, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 3:21-cv-1684-SI <br><br> **OPINION AND ORDER** |

Caitlin S. Laumaker and George J. Wall, LAW OFFICES OF GEORGE J. WALL, 825 NE 20th Avenue, Suite 330, Portland, OR 97232. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Shata L. Stucky, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Plaintiff Fredrick T. brings this appeal challenging the decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) under title XVI of the Social Security Act (Act). The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and remands for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born February 3, 1974. AR 1445. He was 40 years old as of the amended alleged disability onset date. *Id.* Plaintiff alleges that he suffers from diabetes with diabetic neuropathy, post-traumatic stress disorder (PTSD), chronic obstructive pulmonary disease, anxiety, depression, and excoriation (skin picking) disorder.

Plaintiff initially applied for disability insurance benefits (DIB) and SSI in 2010, alleging a disability onset date of August 15, 2008. AR 11. Disability Determination Services (DDS) denied Plaintiff's applications. *Id.* Plaintiff did not appeal the denials. AR 47. Plaintiff reapplied for both DIB and SSI in 2012. AR 11. DDS denied the claims initially and upon reconsideration. *Id.* Plaintiff had a hearing before Administrative Law Judge (ALJ) Vadim Mozyrsky on June 29, 2015. AR 44. The ALJ denied Plaintiff's claims. AR 8. Plaintiff appealed the decision to the Appeals Council (AC), which denied review. AR 1. Plaintiff then appealed to this District Court. United States Magistrate Judge Thomas Coffin determined that the ALJ had committed harmful error in rejecting Plaintiff's subjective symptom testimony about his peripheral neuropathy. AR 1400-03. District Judge Ann Aiken adopted Judge Coffin's Findings and Recommendation and remanded the case. AR 1420.

On remand, Plaintiff amended his alleged onset date to May 11, 2014, and withdrew his DIB claim. AR 1429. Plaintiff had his second hearing before ALJ Mozyrsky on June 25, 2020. *Id.* The ALJ again denied Plaintiff's SSI claim. AR 1446. Plaintiff requested review of the ALJ's decision, which the AC denied. AR 1330. Accordingly, the ALJ's decision is the final decision of the Commissioner and Plaintiff seeks judicial review of that decision.

B.  **The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

        claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

        The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 11, 2014, the amended alleged onset date. AR 1432. At step two, the ALJ found that Plaintiff suffered from six severe medically determinable impairments: anxiety, depression, a substance use disorder in remission, PTSD, diabetes type I with diabetic neuropathy, and chronic obstructive pulmonary disease. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1433.

The ALJ next determined that Plaintiff had the RFC to perform a range of sedentary to light work as defined in 20 C.F.R. 404.1567(a) with the following limitations:

> [H]e can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk two hours total in an eight-hour workday. He can tolerate no concentrated exposure to airborne irritants. He is limited to simple tasks. He can engage in simple work-related decisions. He can interact with coworkers and the public on an occasional basis.

AR 1435. At step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. AR 1444.

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy. AR 1445. Accordingly, the ALJ concluded that Plaintiff was not disabled from the amended alleged onset date through August 12, 2020, the date of the ALJ's decision. AR 1446.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony about his mental health symptoms and impairments; and (2) improperly rejecting the opinion of Plaintiff's treating therapist, Jane Rekas, LCSW.

### A. Plaintiff's Symptom Testimony

#### 1. Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency, and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering

how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom

PAGE 9 – OPINION AND ORDER

testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

### 2. Analysis

The ALJ determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms and did not find evidence of malingering. AR 1437. The ALJ then concluded that Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms was not consistent with the record. *Id.* As grounds for discounting Plaintiff's mental health symptom testimony, the ALJ cited Plaintiff's improvement with treatment, the inconsistency of Plaintiff's testimony with that improvement, and a lack of objective medical evidence supporting Plaintiff's claims. AR 1437-38.

#### a. Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). "Reports of

'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). A court must also consider "that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* "The fact that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his ability to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (cleaned up).

As the Ninth Circuit explained in *Garrison*,

> [I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

To support his conclusion that Plaintiff had improved with treatment, the ALJ relied on treatment notes from March and April 2020. AR 1437. Those treatment notes show that Plaintiff had reported low mood and motivation to his provider on March 30, 2020. AR 1870. His provider prescribed Wellbutrin. *Id.* At his next appointment, on April 21, 2020, Plaintiff reported improvement in mood and motivation. AR 1881. During that appointment, Plaintiff rated his depression at a three out of ten. *Id.* He also rated his anxiety at a four out of ten and complained of trouble falling asleep. *Id.* Plaintiff's April 2020 appointment is the final appointment in the record before Plaintiff's disability hearing in June 2020. AR 1339. The ALJ concluded that the treatment notes from March 30 and April 21, 2020, demonstrated "improvement in symptoms

PAGE 11 – OPINION AND ORDER

with Wellbutrin." AR 1437. The ALJ relied on that improvement in discounting Plaintiff's testimony. *Id.*

The treatment notes from March and April 2020 do not constitute substantial evidence to support the ALJ's decision to discount Plaintiff's testimony on the ground that his mental health symptoms improved with treatment. Evidence of symptom improvement must be weighed within the context of a plaintiff's "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Plaintiff's medical record shows that Plaintiff had taken Wellbutrin prior to 2020 and had experienced no significant changes in symptoms when either starting or stopping the medication. AR 1204. The record also shows that Plaintiff's symptoms related to depression have waxed and waned. For example, Plaintiff described improvements in his mental health symptoms in the spring and summer of 2016, followed by a worsening of symptoms in the fall of that year. AR 1595. Later, in July 2019, Plaintiff reported that he was not experiencing much depression. AR 1706. And in September 2019, Plaintiff rated his depression at a two out of ten. AR 1684. Plaintiff's symptoms of depression then worsened again, as Plaintiff reported low mood and motivation in March 2020. AR 1870. Plaintiff also testified that he has "ups and downs" with his mental health symptoms. AR 1352. He has described his depression as cyclical. AR 1214. As the Ninth Circuit explained in *Garrison*, when a plaintiff's symptoms wax and wane, it is error for the ALJ to treat isolated instances of improvement as demonstrating that a plaintiff is capable of working. *Garrison*, 759 F.3d at 1017. The single instance of improvement cited by the ALJ does not amount to substantial evidence that Plaintiff's symptoms significantly improved with treatment.

Further, the ALJ's opinion does not mention any improvement in symptoms of Plaintiff's anxiety or PTSD, which the ALJ determined were severe impairments at step two of the

sequential analysis. AR 1432. Plaintiff has consistently complained of symptoms related to his anxiety and PTSD. AR 1595, 1619, 1682, 1684, 1692, 1696, 1704, 1706, 1849, 1853, 1865, 1872. He has described those symptoms, including hypervigilance, paranoia, night terrors, and panic attacks, as more severe than his symptoms of depression. AR 1706, 1849, 1865. Improvement of some symptoms does not constitute a reason to discount testimony that the plaintiff continues to suffer from severe symptoms, particularly mental health symptoms, which are cyclical by nature. *See Garrison*, 759 F.3d at 1017-18 (explaining that because mental health symptoms wax and wane, to provide a clear, convincing, and specific reason to discount a plaintiff's claimed limitations, instances of improvement that an ALJ cites must "chart a *course* of improvement" and "must in fact constitute examples of a *broader development*" (emphasis added); *see also Ghanim*, 763 F.3d at 1161-62 (rejecting argument that records indicating improvement in depressive mood preclude disability based on PTSD and depression when records showed cyclical problems with nightmares, trouble sleeping, depression, and other symptoms, and concluding "that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his ability to function in a workplace" (cleaned up)).

Based on Plaintiff's overall diagnostic picture, the treatment notes cited by the ALJ do not constitute substantial evidence of improvement with treatment. The alleged improvement therefore is not a clear and convincing reason to discount Plaintiff's mental health symptom testimony.

      b. **Inconsistent Statements**

          i. **Testimony Related to Symptoms Over Time**

The ALJ concluded that Plaintiff's improvement with treatment contradicted Plaintiff's testimony that his mental health symptoms have worsened over the past five years. AR 1437.

PAGE 13 – OPINION AND ORDER

The ALJ cited this inconsistency as a reason for discounting Plaintiff's symptom testimony. *Id.* As discussed above, however, the ALJ's conclusion that Plaintiff's mental health symptoms had improved with treatment was not supported by substantial evidence. That Plaintiff experienced improved mood and motivation in April 2020 is not inconsistent with Plaintiff's testimony that, although he has "ups and downs," his mental health is overall "more challenging now" and he struggles with panic attacks, hypervigilance, and severe night terrors. AR 1352, 1343. The alleged inconsistency therefore does not constitute a clear and convincing reason to discount Plaintiff's symptom testimony.

### ii. Inconsistent Statements at Medical Appointments

The ALJ observed that Plaintiff had denied depression, anxiety, mental disturbance, hallucinations, and paranoia at an October 2014 appointment and had denied fatigue at appointments in 2018 and 2019. AR 1437-38. The Commissioner argues that the ALJ referred to these symptom denials because they were inconsistent with Plaintiff's allegations of his symptoms of PTSD, anxiety, and depression. These purported inconsistencies, the Commissioner argues, constitute a clear and convincing reason for discounting Plaintiff's testimony.

The ALJ's opinion does not reflect this reasoning. The ALJ did not assert that Plaintiff's symptom denials at certain medical appointments were inconsistent with Plaintiff's testimony. Nor did the ALJ tie Plaintiff's prior statements to any contradictory testimony. *Id.* Rather, the ALJ referred to Plaintiff's select denials of symptoms when explaining that Plaintiff's anxiety and depression were "not constant." AR 1437. The Court disregards *post hoc* explanations by the Commissioner. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Because the ALJ did not

determine that Plaintiff's symptom denials were inconsistent with Plaintiff's testimony, the Court must disregard this argument by the Commissioner. Further, Plaintiff testified as to the cyclical nature of his mental health symptoms. The fact that his symptoms are "not constant" is *consistent* with his testimony.

### c. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 416.929(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

In discounting Plaintiff's subjective symptom testimony, the ALJ cited mental status examinations from 2014 and 2015 in which providers observed no signs of depression, anxiety, or paranoia. AR 1438. The ALJ noted that Plaintiff has been described as both "calm" and "anxious" during medical examinations. AR 1434. The ALJ appeared to conclude that the objective medical evidence does not fully support Plaintiff's claimed limitations.

The Court has rejected the ALJ's other reasons for discounting Plaintiff's testimony. Even if Plaintiff's claimed limitations are not supported by the objective medical record, that cannot, by itself, stand as the clear and convincing reason supported by substantial evidence

required to discount Plaintiff's subjective symptom testimony. The ALJ therefore erred in discounting Plaintiff's mental health symptom testimony.

## B.  Testimony of Ms. Rekas

Effective March 27, 2017, the Social Security Administration amended its regulations and Social Security Rulings (SSRs) relating to the evaluation of medical evidence, including the consideration of "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[3] Most of these changes were effective only for claims filed after March 27, 2017. The Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f) and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March 27, 2017, the revised version of 20 C.F.R. § 416.927 governs Plaintiff's claim.

This revised regulation incorporates the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources, and generally giving less deference to "other" medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions, explain the weight given to such opinions, provide sufficient analysis to allow a subsequent reviewer to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the

---

[3] Among things, the Commissioner rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5845; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Because Ms. Rekas is a licensed clinical social worker, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). In evaluating "other" source testimony, the error is harmless, for example, when the opinion is inconsistent with a medical source opinion, particularly one that specializes in the field, and is "therefore entitled to greater weight." *Id.* at 1112. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless

where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ gave only partial weight to Ms. Rekas's opinion because he found her opinion inconsistent with Plaintiff's activities of daily living and not supported by objective medical evidence. AR 1443. Ms. Rekas described Plaintiff as "quite debilitated by a very heightened baseline of daily anxiety, only counterbalanced by depressive isolation." AR 1808. She wrote that it is difficult for Plaintiff to leave his house "without extreme hypervigilance." *Id.*

The ALJ determined that Plaintiff's activities of daily living contradicted the severity of symptoms described by Ms. Rekas. AR 1443. Although some of the activities listed by the ALJ are irrelevant to Ms. Rekas's opinion, others are germane, such as performing small jobs for friends, attending recovery meetings monthly, grocery shopping regularly, and spending every other week at his sister's house to help with her children. *Id.* These activities demonstrate that Plaintiff regularly spent extended periods of time out of his house and around others. The activities are therefore germane to the ALJ's determination that Plaintiff had greater ability to function than was described by Ms. Rekas.

In discounting Ms. Rekas's testimony, the ALJ also cited objective medical evidence, referencing his earlier determination of the severity of Plaintiff's impairments at step three of the sequential analysis. The ALJ noted that a provider had described Plaintiff as "friendly and open to conversation," and had said that Plaintiff "makes good eye contact" and "speaks with a strong

voice." AR 1443 (quoting AR 1634). The ALJ also observed that, although some treatment records described Plaintiff as "anxious," others described him as "calm" or "relaxed." AR 1434 (citing AR 1106, 1104, 1689). These observations are germane to Ms. Rekas's opinion that Plaintiff has a "very heightened baseline of daily anxiety" and experiences "extreme hypervigilance" when he leaves his home. AR 1808. Because Plaintiff's activities of daily living and the objective medical evidence provide specific and germane reasons for discounting Ms. Rekas's opinion, the ALJ did not err in giving that opinion only partial weight.

**C. Remand for Further Proceedings**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its

discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible error by failing to provide specific, clear, and convincing reasons to reject Plaintiff's subjective symptom testimony. The record is fully developed and is free of conflicts. The ALJ has rejected the conflicting agency medical opinions. Plaintiff's testimony should therefore be credited as true. After crediting Plaintiff's testimony as true, however, it remains unclear whether the ALJ is required to find Plaintiff disabled. Plaintiff's arguments for remanding for an award of benefits center on the testimony of Ms. Rekas. The Court, therefore, declines to remand for an award of benefits. The Court remands to the ALJ to determine whether Plaintiff is disabled. Upon remand the Commissioner must credit Plaintiff's testimony as true.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 10th day of February, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge